which is Santos v. the United States. Let's bring in Ms. Brennan and Ms. Rivera. And can the chief hold on for a minute, please? Certainly. One sec. Good morning, council. Hold on for a moment while we take one quick break. Good morning to both of you. Good morning. Thank you. Absolutely. Ms. Brennan, will you please speak to us? Good morning, Your Honors. Brenda Brennan with the Federal Defender's Office for Reinaldo Santos. We agree with the government on all issues in this case. It's a kind of unique situation to be in both as to the merit and as to the proper disposition here. With regard to the questions posed in the COA, based on Florida case law and Florida jury instructions, the Florida battery statute is divisible into two crimes. Each of the crimes has an alternative element. There are three means of updating the statute, but only two. Touch or strike is an indivisible element. The second question... My problem, Ms. Brennan, is about whether your client can satisfy Beeman. Your Honor, Beeman was decided after the 2255 was denied by the district. Yes, I'm aware of that. But if we look at this, we can look at the record. It appears to me that there's no way to say that the district court necessarily relied on the residual clause. Well, that's a question of historical fact. We're not limited to whether the court mentioned a clause at the Senate. Of course, this was in 1995. There's very little case law on the books, except for Taylor, actually, where the Supreme Court invited the government to prove everything under the residual clause. So that would be... And I can cite you to the particular... Yeah. I know what we granted a CLA on. It just seemed to me that expansion might be appropriate because it looks to me like it's your client's burden. And I don't see how your client could possibly satisfy it under Beeman. Well, I think we could satisfy it the way the court directed in Pickett. It's a question of historical fact. And we have the right to make a showing before the district court to survey the legal landscape at the time, which we have not done. I mean, Beeman wasn't an issue. Just talk about the legal landscape. We can look at the transcript of what occurred when your client was sentenced. Well, the court has actually, on repeated occasions, that whether it's more likely than not that the district court relied on the clause is provable in multiple ways. There is direct evidence. Say I'm sentenced based on a certain clause, or the government could ask for it, or that could be in the PSI. But that can also be proven circumstantially. In Pickett, in fact, which was a case, I think, I'm not sure when Pickett was before the district court, but it was at least 10 years after our case. And even by the time of Pickett, the court said the legal landscape was not clear. And the question is not even reducible to the legal landscape in terms of could this predicate possibly qualify under another? The question, as Pickett has refined it, is what was in the mind of the district judge? And that is a question, in fact, that can be proven circumstantially, perhaps by surveying other cases that this judge handled at the time to see if the judge said something. For instance, that my default is always the residual clause. As numerous judges in the Southern District of Florida have said, that was their default. And in fact, remand in Pickett, that is what the 2255 was. Ms. Bryn. Yes. Judge Marcus has a question. Just help me with it. I obviously am very familiar with Pickett. If there be a difference, it seems to me there are two. The first difference, it seems to me, is that in this case, we do have a square finding by the district court that there was nothing in the record that at least she could find that would clarify or illuminate this question. That is to say the central question here. The second difference is that in Pickett, we sent the case back to the same judge who was the sentencing judge in the case. That obviously is not something we could do here. If that is the case, I guess the question that Judge Pryor is asking and that you can help me with is, why wouldn't it be futile to send it back if there is nothing in the record that could clarify or suggest an answer to the critical question? If there is nothing in the case law that would otherwise illuminate the problem, aren't we just spinning everyone's wheels here? Wouldn't it be an act of futility? I don't think so. We have not had an opportunity to make the type of record that is allowable after Beeman and Pickett. Actually, in Pickett, there was the same situation where I believe the magistrate and district court rolled on chance and said that the record itself was unclear. Not only in Pickett, but in many cases that preceded and have postdated Pickett, the court has always remanded where the legal standard has changed in order to give the district court the opportunity to comply with that standard. With regard to the question you asked about this not being the same judge, the disposition in Pickett is not limited to that situation. The court pointed out that particularly when it's the same judge, but it certainly was not limited. Arena was not limited to the situation where there is the same judge that it would be remanded to. I point the court to a case from our office, which is United States. Oh, no. Stephanie, you need to stop the clock. Ms. Brennan is frozen. Her connection the whole time has been unstable. Yes. She's obviously not in the office. She probably is. Mr. Maycock. Definitely. Can you hear us? Yes, I can hear you. Shall I try to contact her? Please. Okay. She may be trying to reconnect. I saw that she disappeared. I believe so. That's what she was instructed to do. Should she freeze is to try to reconnect and or call. Let's give her a moment. Certainly. Okay. Okay. Okay. Okay.  Okay. Maybe you should reach out to Mr. Maycock.  Thank you. I apologize, Your Honor. We stopped the clock and we've been waiting. As soon as you froze up, we've just been trying to wait for you to reconnect. Your Internet connection's been a little unstable. And until then, I think we understood everything you were saying, but it has been a little unstable. Right. I was getting messages about that. So hopefully it will work for us. I think I was speaking about the case of Antoine Dixon. It is analogous to where the original district court judge had passed away. And the court did, in fact, remand to that the case had been assigned to. To consider under Beeman, whether as a matter of historic act, it was more likely than not. Well, even though Beeman hadn't been decided, the district court here, though, actually looked at the record and said it couldn't tell. No, Beeman had not been decided. I know. I know. Miss Brent, Miss Brent. I said, even though Beeman had not been decided yet, the district court, nevertheless, looked at the record and made a finding that it couldn't tell. But I believe, Your Honor, that Beeman and Pickett together allowed the movement to meet the burden circumstantially. Not only the direct evidence of what is in the record. In Pickett, that was the case as well. You couldn't tell from the record as well. But the movement was allowed to meet the burden circumstantially. Could you tell me, Miss Brent, could you give me some idea of what circumstantial evidence might answer the question? The reason I ask is, I looked at the record here. There's certainly nothing in the record that answers the question. The district court squarely found that here. And then I was looking for some circumstantial evidence. I looked at the government's notice of intent to rely on 924E. I looked at the PSI. I looked at the objection that Santos had lodged. The one objection to the PSI, which tracked the objection raised at sentencing and did not turn on the substance of the ACA. And then I looked at the case law to see if there was anything there that could possibly be used to fashion an argument that would enable you to say that the district court did not solely rely on the residual clause. And I just couldn't find anything. And that's why I'm just asking the question. Give me some idea of something that would suggest this isn't an act of futility. Well, I have never reviewed the case law because we were not proceeding under BEMA. So I have not thoroughly reviewed the case law yet. We haven't had any adversarial briefing on that point. But I will point you at least to the Supreme Court's decision, Taylor, at the time, which, as I said in footnote nine, the court said, and that was an enumerated clause, that the court encouraged the government saying, the government remains free to argue that any offense, including offenses similar to generic burglary, should count towards enhancement as one that otherwise involves conduct that presents a serious potential risk of physical injury. Do you have anything other than Taylor, Ms. Brent? I mean, just as a practical matter, if we were to remand this, aside from the legal landscape, the case law, with which we're very familiar, what is it that you would want to present to the district court that the district court hasn't already had the opportunity to look at? The district court has really not looked at the legal landscape. OK. You said their default was to only consider the residual clause. And also Judge Rutger transcripts from period to see Rutger might have said at the time that that was his default. And that is circumstantial evidence that I would like to be able to prove before the district court in addition to surveying the legal landscape. OK, Ms. Brent. You've saved five minutes for rebuttal. Ms. Rivera. Good morning, and may it please the court. With the court's permission, I will move directly to the Beeman question and then answer any other questions the court may have on the issues presented in the COA. Is there any going back? I don't think so, Your Honor. We we agree with you that in this particular case, a remand would be futile. As Judge Marcus pointed out, the district court has already found that there's nothing in this particular record that would indicate that when Mr. Santos was sentenced back in 1994, the district court relied on the residual clause and not on the elements clause or on a combination. There's no circumstantial evidence. I also looked at the objections to the PSI, any other indication in the record that Mr. Santos could show that when he was sentenced, it was, quote, more likely than not that he was sentenced based on the residual clause. And the state of the law back in 1994 was such that both the elements clause and the residual clause were in play. I mean, certainly it wasn't until 2010 that Curtis Johnson came out and kind of took elements clause off the table for Florida Battery with its touch strike interpretation. The residual clause and the elements clause both could have been at issue. And if you at the sentencing, there was no objection to Florida, that Florida Battery conviction being used as an ACCA predicate. So the court never said. And you're right, unlike Pickett, if this were to be remanded, it would not be going back to the same judge who could perhaps think back to what was in that judge's mind at the time of the original sentencing. This case was sentenced by Judge Rutger, who has since passed away and is before a new district court judge now. Let me ask you this. She, Miss Bryn, says two things in response to that. First, she says, I haven't had a chance to marshal the case law that might possibly suggest an answer or at least illuminate the problem. And second, she says one piece of circumstantial evidence that she might otherwise mine if she had the opportunity to do that was to look at other comments that the sentencing judge may have made in other cases. Where you might have gleaned from something Judge Rutger said in a different sentence at a different time, but within the relevant time frame, that would illuminate how he looked at the residual clause. What is your response to both of those points? I agree with one and not the other. It is true that Mr. Santos has not, or either party, has not definitively briefed the issue of what the state of the law was. I have looked at it, and I believe it is what I just told you, that both clauses were in play. But Miss Bryn is correct that Mr. Santos has not had the chance to do that because the amendment had not been decided back when the district court first ruled. Let me ask about that, though. So we granted the application for a second or successive motion. And when the district court was evaluating that motion, it considered whether the district court at sentencing had relied on the residual clause or not. And there was arguing about that, right? Correct. Yes, Your Honor. There was an opportunity to make an argument about the legal landscape or whatever to inform that inquiry, and the district court made a determination that it couldn't tell. Fair enough. You're right. Yes, you are correct. And then on the second point, I don't think it really sheds a whole lot of light, even if we were able to unearth some cases that Judge Rutger decided back in 1994 and other cases where he decided that a battery predicate was decided under the residual clause versus the elements clause, because perhaps that argument hadn't been made in that other case. I don't think it sheds a whole lot of light. Perhaps it sheds a little bit of light. But, you know, as you have both stated, Judge Marcus and Chief Judge Pryor, the district court has already found that we really can't tell in this case whether Mr. Santos was sentenced under the ACCA based on the residual clause. And when the record is unclear or silent, Beeman holds that the movement has not met his threshold burden. Would it be an appropriate piece of circumstantial evidence to look extrinsically outside of this record to see what a district court judge might have said in another case? Would that be a piece of circumstantial evidence that could properly be admitted for the purposes of illuminating this question? I think it could be. You know, if we knew that Judge Rutger said, you know, I always go with the residual clause because it's a catch all provision and it's much easier than the elements clause. And I always do that. I think that that's something. And if that were combined with perhaps some other evidence, perhaps Mr. Santos, sure, could satisfy his burden. I haven't seen such an instance, but I wouldn't preclude that that was admissible or, you know, would shed some light on the issue of whether he can satisfy his threshold burden of proof under Beeman. If the court has no other questions on Beeman, would the court want me to address? I just have a bottom line question. You've heard the entire discussion, the questions we've asked, the answers, Ms. Brin, and you have given. Is it your view this case should go back or not? You know, under Pickett, I felt compelled to bring Beeman and Pickett to the court's attention and to suggest that if it wanted a remand, that we would not oppose that. But I agree with the court that in this particular case, where it's not the same district court judge and where, you know, And where the record is silent. And where the record is silent, because where the record is silent, then the movement cannot satisfy that threshold showing under Beeman. Thank you. If the court has no other questions, we will rely on the arguments in our brief. Okay. Thank you, Ms. Ribeiro. Ms. Brin, you've got five minutes. Yes, I will just point out that both in Pickett and in Antoine Dixon, the record was silent, and both were given the opportunity to prove as a matter of historical fact. In Pickett, what happened is Judge Middlebrook said, yes, my default at the time was to only impose the sentence under dual clause, and that resolved the case. There's another judge prior to this. I mean, when we granted the application for a second or successive motion, the district court made a determination about whether the sentence had been imposed in reliance upon the residual clause or not, and concluded and found that the record was silent, that it couldn't tell. So that opportunity has already happened once. It's true that we didn't have Beeman about how the burden of proof works, but we did have a determination by the district court, didn't we? I believe that both the magistrate and the district court followed the in-rate. There was a conflict in dicta between two cases at the time, and both the magistrate and district court followed in-rate chance that said if the court may have imposed it under the residual clause, that would be sufficient, and then they moved on to the merits. Ms. Brown, I'm just asking, didn't the district court try to determine whether the sentence had been imposed in reliance upon the residual clause and determine that it couldn't tell? Well, the court only said that there was nothing clear from the record, which was the same case in Pickett and in Antwan-Dixon, and the court followed, you know, its precedent in those cases and remanded to allow the movement in both cases to prove as a matter of fact, circumstantially, with evidence outside of the record. And I believe Mr. Santos should be given the same opportunity that other movements before this court have been when the law changed. There was no reason to make that type of showing when the magistrate judge said, I'm going to follow the rule of chance. District court went with that as well. So we... Uh-oh. Looks like we might have lost her. This is quite an important issue. Mr. Santos served 30 years as an... Excuse me? You're having some instability in your connection again, Ms. Brown. That's all right. We missed just the last thing you said. Yeah. Stephanie, give her another 30 seconds. Stephanie. Sorry, my side was muted. Sorry. Two and a half minutes. Okay. I don't know at which point I went out. Just keep going, Ms. Brown. Let me reiterate that in both Pickett and in Dixon, it was this case where the magistrate followed in Ray Chance. When Beeman was decided after the 2255 was resolved, the court said that because it was an intervening change of law, the standard has changed. And both in... And the court said, this is not the universe of ways of proving a historical fact that we're speaking about in these decisions. And particularly in Pickett, the court made a point to say, we want to know what was in the judge's mind at the time. And as I said, I think there may be a way to prove what was in the sentencing judge's mind here by looking at other cases that he has at the time. And I would ask the opportunity to prove that to the district court as other similarly situated movements have been able to do. If the court has no further questions, I apologize again for the instability, Jeanette, and thank you for your indulgence. No, thank you, Ms. Brown. I'm not at all... I don't know that you have any apology that you owe us. And who knows, it could be just internet traffic in general that's causing a problem with the Zoom platform. But we appreciate your patience about it as well. And thank you both for your argument. We'll move on to our last case today. Thank you.